**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CHESAPEAKE EMPLOYERS' INSURANCE COMPANY, | ) ) | |
| | ) | CIVIL ACTION NO. |
| *Plaintiff*, | ) | 2:13-CV-00209-RWS |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE EADES, INSURANCE OFFICE OF AMERICA, JIM CONNER, and HORNER SERVICES, LLC, | ) ) ) ) | |
| | ) | |
| *Defendants*. | | |

## JOINT PRELIMINARY REPORT AND DISCOVERY PLAN

Pursuant to Federal Rule of Civil Procedure 26 and Local Rule 16.2, Plaintiff Chesapeake Employers' Insurance Company ("Plaintiff" or "Chesapeake") and Defendants Bruce Eades, Insurance Office of America ("IOA"), Jim Conner ("Conner"), and Horner Services, LLC ("Horner") (collectively, "Defendants") file this Joint Preliminary Report and Discovery Plan and show as follows:

**1.     Description of Case:**

 (a)     Describe briefly the nature of this action.

This is an action for negligent misrepresentation, tortious interference with

contractual relations, fraud, conspiracy, joint enterprise liability, and federal and state RICO arising, according to Plaintiff, from the issuance of certain allegedly false certificates of insurance pertaining to workers' compensation policies insuring Horner and Plaintiff's claims for additional premiums based on a policy audit of its insured, Merciers, Inc.

(b)    Summarize the facts of this case. The summary should not be argumentative nor recite evidence.

Plaintiff contends that Defendant Horner entered into a contract to provide railway pole line removal services for Chesapeake's insured, Merciers. (*See* FAC Ex. J.) Plaintiff contends Horner was required to obtain valid workers' compensation insurance in the states where it did work for Merciers. (*See* FAC Ex. J, ¶ V.) Horner procured workers compensation and other insurance through Eades and IOA, who issued certificates of insurance from time to time. Horner provided certificates of insurance to Merciers, which bore a facsimile signature by Eades, an IOA agent. (*See, e.g*., FAC ¶ 16.) Plaintiff contends these certificates of insurance indicated that Horner held workers compensation insurance in states outside of Georgia where, upon information and belief, it performed work for Merciers. (*See, e.g.,* FAC ¶ ¶ 15-16.) According to the First Amended Complaint, Chesapeake relied on these certificates of insurance when it calculated workers' compensation premiums owed by Merciers to Chesapeake for insurance in 2010 and 2011. (FAC

¶ 19.) Chesapeake contends that the certificates of insurance were false and that Horner did not in fact have workers' compensation insurance outside of the state of Georgia. On January 17, 2013, counsel for IOA admitted to Merciers that certain certificates of insurance provided by Horner "should be completely disregarded." (FAC ¶ 35; Ex. I.) However, having previously relied on the false certificates when it audited Merciers, Chesapeake had excluded Horner's payroll from its calculation of Merciers' premium. As a result, Chesapeake never was paid nearly $1 million in premiums that it claims it is otherwise owed pursuant to its policy insuring Merciers. (FAC ¶ 39).

Defendants contend that there was no express contractual requirement for Horner to obtain workers' compensation insurance for Horner's subcontract workers where the subcontractors maintained their own insurance. IOA issued certificates of insurance in the normal course of business upon renewal and upon request. In accordance with standard industry practice, Eades did not personally prepare or sign the certificates but certificates were prepared by IOA staff containing his electronic or facsimile signature. Certain certificates of insurance claimed by Plaintiff to be false did not contain false representations about Horner's workers compensation insurance policy. Four other certificates allegedly containing false information were not issued until December 18, 2012 – well after

the policies had expired and despite earlier dates listed on the face of three of the four certificates. Those certificates were voided within 30 days by IOA, who notified Merciers that the certificates should be disregarded to the extent relied upon "to verify coverage for injury to workers other than Horner employees." The certificates contained express disclaimers warning that they did not "amend, extend or alter coverage afforded by the policies" and Plaintiff never requested copies of the declaration pages or policies. Defendants contend the certificates were not issued with the intent to deceive or mislead Plaintiff, or anyone. Defendants contend that the only actual pecuniary loss incurred by Plaintiff as a result of the events at issue is the Sheldon workers compensation claim, which arose as a result of a Horner sub-subcontractor's workers' compensation carrier's denial of benefits to William Sheldon. All other potential workers compensation claims would be time-barred.

(c)     The legal issues to be tried are as follows:

By Plaintiffs:

Whether and to what extent Defendants are liable for negligent misrepresentation under Georgia law; whether and to what extent Defendants are liable for tortious interference with contractual relations under Georgia law; whether and to what extent Defendants are liable for fraud under Georgia law;

whether Defendants engaged in a conspiracy under Georgia law; whether Defendants Conner and Eades are liable for violations of O.C.G.A. §§ 16-14-4(b) and 16-14-4(c) (Georgia RICO) and 18 U.S.C. §§ 1962(c) and 1962(d) (federal RICO), which includes a determination of whether Defendants Eades and Conner committed insurance fraud, and/or mail and/or wire fraud; whether Defendants engaged in a joint enterprise; and whether Defendants are liable for attorneys' fees and expenses of litigation, and punitive damages.

By Defendants:

1. Did Eades or Connor commit the predicate acts of insurance, wire and/or mail fraud?

   a. If so, were these predicate acts directed at Plaintiff?

   b. Do these predicate acts constitute a pattern of racketeering activity under both Georgia and federal RICO law?

      i. Has closed-ended continuity been established in this case?

   c. Did these alleged predicate acts proximately cause the Plaintiff's alleged injuries?

2. Are lost premium damages legally recoverable under either Georgia and/or federal RICO law?

3. Did Plaintiff reasonably rely on certificates of insurance ("COIs") issued by IOA?

4. Did the COIs issued by IOA contain a false misrepresentation of material fact?

5. Did any of the Defendants issue or provide the COIs with the intent to defraud Plaintiff?

6. Did Plaintiff exercise due diligence?

7. Was Plaintiff a recipient of the COIs of which Defendants were actually aware would receive and rely upon same?

8. Did Merciers' contract with Horner require Georgia-based Horner to carry workers compensation insurance in all states or to cover subcontractors even when the subcontractors had their own workers compensation insurance?

9. Has Plaintiff's contract with Merciers become more expensive to perform?

10. Are Defendants strangers to the business relationship between Plaintiff and Merciers?

11. Did IOA/Eades and Horner/Conner have a right of mutual control over each other?

12. What is the measure of damages recoverable by Plaintiff for intentional and unintentional torts?

a. Did Defendants' conduct proximately cause actual loss or injury to Plaintiff?

b. What are the actual out of pocket damages suffered by Plaintiff?

c. Is Plaintiff entitled to seek contractual premium damages owed by its insured from a non-party to the contract?

13. Did Plaintiff fail to pursue administrative remedies in connection with the Sheldon claim?

14. Did Plaintiff fail to mitigate its alleged damages?

15. Did Plaintiff assume the risk of loss by failing to perform a proper audit?

16. What is the legal basis for Horner's sub-subcontractor's workers' compensation carrier's denial of benefits to William Sheldon?

(d)    The cases listed below (include both style and action number) are:

(1) Pending Related Cases:

*William Sheldon v. Wayne Development Corp. d/b/a Haulaway Trucking, et al.,* Missouri Division of Workers' Compensation Injury Number 10-072424 (the "Sheldon Claim"). This case may be related because Chesapeake's affiliate's involvement in the case arose (1) out of Horner's failure to secure workers' compensation insurance outside the state of Georgia (according to Plaintiff); or (2) due to  a denial of benefits by a Horner sub-subcontractor's insurance carrier

(according to Defendants).

        (2) Previously Adjudicated Related Cases:

None.

2.    This case is complex because it possesses one or more of the features listed below (please check):

   __X__ (1) Unusually large number of parties

   __X__ (2) Unusually large number of claims or defenses

   __X__ (3) Factual issues are exceptionally complex

   _____ (4) Greater than normal volume of evidence

   __X__ (5) Extended discovery period is needed

   _____ (6) Problems locating or preserving evidence

   _____ (7) Pending parallel investigations or action by gov't

  __X__ (8) Multiple use of experts

   _____ (9) Need for discovery outside United States boundaries

   _____ (10) Existence of highly technical issues and proof

   _____ (11) Unusually complex discovery of electronic information

3.     **Counsel:**

The following individually named attorneys are hereby designated as lead counsel for the parties:

Lead Counsel for Plaintiff:

Jeffrey Y. Lewis
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia 30363
Phone: (404) 873-8500
Fax: (404) 873-8501
jeff.lewis@agg.com

Lead Counsel for Defendants Eades and IOA:

Jo L. Meeks
JAMES BATES BRANNAN GROOVER LLP
3399 Peachtree Road, Suite 1700
Atlanta, Georgia 30326
Phone: (404) 844-2755
Fax: (404) 997-6021
jmeeks@jamesbatesllp.com

Lead Counsel for Defendants Conner and Horner:

Karl Dix, Jr.
SMITH, CURRIE & HANCOCK LLP
2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, Georgia 30303
Phone: (404) 521-3800
Fax: (404) 688-0671
kfdix@smithcurrie.com

**4.      Jurisdiction:**

Is there any question as to this Court's jurisdiction?

No.

**5.      Parties to This Action**

(a)      The following persons are necessary parties who have not been joined:

Defendants contend that Merciers, Inc., Cherokee Land Clearing, LLC and Haulaway Trucking, Inc. (to the extent these parties are not yet considered "joined") are necessary parties. Plaintiff contends that the Court ruled in its January 5, 2015 Order that Merciers was not a necessary party (*see* ECF No. 41, pp. 9-10). Plaintiff contends that there are no necessary parties who have not been joined and that Cherokee Land Clearing, LLC and Haulaway Trucking, Inc. are not necessary parties and should not be joined.

(b)      The following persons are improperly joined as parties:

Though they have not been served and are not currently joined as parties, Chesapeake objects to the third-party complaints filed by Defendants Conner and Horner against Cherokee Land Clearing, LLC and Haulaway Trucking, Inc. (ECF Nos. 51 and 52). Chesapeake will file motions to strike those third-party complaints.

(c)      The names of the following parties are either inaccurately stated or

necessary portions of their names are omitted:

None.

(d)     The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

## 6.     Amendments to the Pleadings

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.

(a)     List separately any amendments to the pleadings that the parties anticipate will be necessary:

None anticipated at this time.

(b)     Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

## 7.     Filing Times For Motions

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below. All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a)     *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b)     *Summary Judgment Motions*: within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c)     *Other Limited Motions*: Refer to Local Rules 7.2A; 7.2B, and 7.2E,

7159691v1

respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony*: <u>Daubert</u> motions with regard to expert testimony no later than the date the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

## 8. Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).

Plaintiff objects to the Initial Disclosures filed by Conner and Horner to the extend they identify Cherokee Land Clearing, LLC and Haulaway Trucking, LLC as parties against whom they may claim damages in this lawsuit. Those claims are not properly included in this lawsuit and Plaintiff objects to the addition of new parties.

## 9. Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

The parties do not request a scheduling conference at this time; however, the parties anticipate that a scheduling conference may be helpful and appropriate as the discovery period progresses. The parties will confer with each other and the Court to request a scheduling conference at the appropriate time.

**10.   Discovery Period:**

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

Please state below the subjects on which discovery may be needed:

Discovery is needed on the following subjects:

    a.   Subjects related to the parties' description of the case and statement of legal issues to be tried, set out in section 1 above;

    b.   Subjects listed in the parties' Initial Disclosures, including (but not limited to):

        i.   Horner's workers' compensation insurance status;

        ii.   The terms of Horner's relationship with Merciers;

        iii.   Chesapeake's audits of Merciers.

        iv.   Chesapeake's audit procedures.

        v.   Premiums allegedly owed by Defendants to Chesapeake.

        vi.   Chesapeake's actual pecuniary loss.

      vii.      Merciers' contracts with Chesapeake.

      viii.      Plaintiff's investigation into allegations asserted prior to filing of the complaint.

c. Defendants' issuance of certain allegedly false certificates of insurance and transmittal of them to Merciers;

d. Communications between Eades, IOA, Horner, and Conner regarding issuance of the false certificates of insurance; and

e. Any patterns of issuing false certificates of workers' compensation insurance by Defendants.

The parties reserve the right to seek discovery on additional subjects should those subjects become relevant to the parties' claims and defenses in this lawsuit.

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

Plaintiffs anticipate that the parties will need an additional two months beyond the assigned discovery track of four months; thus, discovery should extend for six months (ending on August 19, 2015). Discovery should be focused only upon the claims and defenses in the case at present, not whether Horner's subcontractors had workers' compensation insurance. The parties may later stipulate to a date upon which fact discovery will close, after which expert

discovery will be conducted.

Defendants contend that an eight (8) month period of fact discovery followed by an additional expert discovery period is necessary in this case. Defendants anticipate intensive fact discovery from at least two non-party entities, including 30(b)(6) depositions of same. Additionally, the parties collectively have identified in their initial disclosures over twenty individuals with knowledge of the facts in this case. Additional witnesses may be identified by recently added third-party defendants. Defendants anticipate that the majority of these individuals will be deposed. Further, Defendants anticipate scheduling difficulties due to the parties' five sets of attorneys who may attend each of the depositions. Therefore, Defendants propose the following discovery schedule:

| | |
|---|---|
| Fact Discovery expires: | October 19, 2015 |
| Plaintiff's Expert disclosures due: | November 18, 2015 |
| Depositions of Plaintiff's Experts by: | December 31, 2015 |
| Defendants' Expert Disclosures due: | January 29, 2016 |
| Depositions of Defendants' Experts by: | February 26, 2016 |

The parties shall identify any and all rebuttal experts expected to testify at trial within 45 days of the deposition of the expert to be rebutted, and no later than

April 12, 2016. Discovery depositions of experts identified under this subpart may

be completed as soon as practicable.

## 11. Discovery Limitation and Discovery of Electronically Stored Information:

(a)     What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

  None.

(b)     Is any party seeking discovery of electronically stored information?

Yes.

If "yes,"

(1)     The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

The parties agree that they will produce documents in electronic form when

practicable, and that they will cooperate to seek agreement on the parameters of

electronic discovery, including, if necessary and/or appropriate, by presenting a

consent order regarding electronic discovery for the Court's approval.

The parties have discussed the sources and scope of production of

electronically stored information and, after service of requests for production of

documents, if any, the parties plan to cooperate to identify applicable search terms,

date limitations, and custodians at that time. If necessary and/or appropriate, the

parties may present a consent order regarding electronic discovery for the Court's approval.

(2)    The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

The parties have discussed the format for the production of electronically stored information, method of production, and the inclusion or exclusion and use of metadata, and will cooperate to reach an agreement regarding the parameters of production. If necessary and/or appropriate, the parties may present a consent order regarding electronic discovery for the Court's approval.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

**12.    Other Orders:**

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

In addition to a consent order regarding electronic discovery anticipated in paragraph 10, the parties may later submit a consent protective order for confidential or proprietary information produced in this litigation. No other orders under Rule 26(c) or Rule 16(b) and (c) are anticipated at this time.

**13.   Settlement Potential:**

(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on January 30, 2014 and that they participated in settlement discussions on that date and several prior dates. Other persons who participated in the settlement discussions are listed according to party:

For Plaintiff: /s/ Jeffrey Y. Lewis

  Other participants: Megan P. Mitchell

For Defendants Eades and IOA: /s/ Jo Lanier Meeks

  Other participants: Amanda Wilson Speier

For Defendants Conner and Horner: /s/ Kirk D. Johnston

(b)   All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

  \_\_\_   A possibility of settlement before discovery.

  <u> X </u>   A possibility of settlement after discovery.

  \_\_\_   A possibility of settlement, but a conference with the judge is

  needed.

  \_\_\_   No possibility of settlement.

(c)   Counsel (X) do or ( ) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is to be determined.

(d)   The following specific problems have created a hindrance to settlement of this case.

  None.

**14.     Trial by Magistrate Judge:**

Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.

(a)     The parties ( ) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day _____, of 20____.

(b)     The parties (X) do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted this 19th day of February, 2015.

*[signatures of counsel appear on the following page]*

ARNALL GOLDEN GREGORY LLP

/s/ Jeffrey Y. Lewis
Jeffrey Y. Lewis
Georgia Bar No. 450713
jeffrey.lewis@agg.com
Megan P. Mitchell
Georgia Bar No. 916954
megan.mitchell@agg.com

171 17th Street NW
Suite 2100
Atlanta, Georgia 30363
404.873.8500 (telephone)
404.873.8501 (facsimile)

*Attorneys for Plaintiff*

JAMES BATES BRANNAN GROOVER LLP

/s/ Jo L. Meeks
Jo L. Meeks
Georgia Bar No. 500812
jmeeks@jamesbatesllp.com
Amanda Wilson Speier
Georgia Bar No. 659237
awilson@jamesbatesllp.com

3399 Peachtree Road
Suite 1700
Atlanta, Georgia 30326
404.997.6020 (telephone)
404.997.6021 (facsimile)

*Attorneys for Defendants IOA and Eades*

SMITH, CURRIE & HANCOCK LLP

/s/ Kirk D. Johnston
Karl Dix, Jr.
Georgia Bar No. 223325
kfdix@smithcurrie.com
Kirk D. Johnston
Georgia Bar. No. 396453
kdjohnston@smithcurrie.com
Steven J. Stuart
Georgia Bar No. 471741
sjstuart@smithcurrie.com

2700 Marquis One Tower
245 Peachtree Center Avenue NE
Atlanta, Georgia 30303
404.521.3800 (telephone)
404.688.0671 (facsimile)

*Attorneys for Defendants Conner and Horner Services, LLC*

## SCHEDULING ORDER

Upon review of the information contained in the Joint Preliminary Report and Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

IT IS SO ORDERED, this _____ day of_____, 2015.

_____
UNITED    STATES    DISTRICT
JUDGE

## CERTIFICATE OF SERVICE

The undersigned attorney herby certifies that he has this day served opposing counsel with the foregoing document by filing the same with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This 19th day of February, 2015.

/s/ Megan P. Mitchell
Megan P. Mitchell